IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SCOTTIE ALLEN KEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:22-cv-00519 |
| | ) Judge Trauger |
| CORECIVIC OF AMERICA, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Scottie Key, a state inmate previously incarcerated at the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee,[1] has filed a pro se Complaint for violation of civil rights under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

The case is before the court for ruling on the plaintiff's IFP application and initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. APPLICATION TO PROCEED IFP

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). 28 U.S.C. § 1915(a). Because it appears from the plaintiff's submissions (Doc. No. 2; Doc. No. 1 at 70–71) that he lacks sufficient financial resources from which to pay the full filing fee in advance, the court **GRANTS** his application (Doc. No. 2) to proceed IFP in this matter.

---

[1] The plaintiff has since been transferred to the Hardeman County Correctional Facility. (*See* Doc. No. 4.)

The warden of the facility in which the plaintiff is currently housed, as custodian of the plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $402 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this order to the warden of the facility in which the plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

The court must conduct an initial review and dismiss the Complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e. To determine whether the Complaint states a plausible claim, the court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual

2

Case 3:22-cv-00519 Document 5 Filed 11/30/22 Page 2 of 9 PageID #: 84

allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The plaintiff sues under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a viable Section 1983 claim, the plaintiff must allege (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Plaintiff's Allegations**

The plaintiff sues CoreCivic of America and Warden Frink—TTCC's corporate operator and Warden, respectively—as well as Chief Porter and Unit Manager Lybranca Cockrell, claiming damages resulting from his assault by other inmates on January 24, 2022; the subsequent denial of placement in protective custody on February 10, 2022; an assault by Chief Porter on April 15, 2022; and additional assaults by inmates on May 4, 8, and 15, 2022, the last of which resulted in the plaintiff sustaining a "broken" face that required treatment at the county hospital. Though all defendants are explicitly sued in their official capacity only (*see* Doc. No. 1 at 2–3), the Complaint is liberally construed as asserting the personal liability of the individual defendants, based on the nature of the allegations against them and the fact that their corporate employer, CoreCivic, is also a named defendant.

3

Case 3:22-cv-00519  Document 5  Filed 11/30/22  Page 3 of 9 PageID #: 85

The plaintiff alleges that he has a lengthy personal and family history with gang members in Smith County, Tennessee. (Doc. No. 1 at 8–9.) He states that he was severely beaten by inmate gang members in 2018, during a previous stint at TTCC, and that three of those inmates were still incarcerated at TTCC when the plaintiff returned after violating his parole. (*Id.* at 7–8.) On January 24, 2022, he was pulled from his bunk and assaulted by three different inmate gang members who had previously attempted to extort money from him. (*Id.* at 6–7.) The plaintiff alleges that his repeated requests "to get incompatibles and criminal charges put on the three that assaulted [him]" have been ignored. (*Id.* at 7–8.) Despite his history of being violently attacked by gang members, the plaintiff was denied placement in protective custody after a hearing on February 10, 2022. (*Id.* at 9.)

Because he was denied placement in protective custody, the plaintiff was forced to "take write ups" so as to remain in segregation where he could avoid exposure to violent inmates. (*Id.* at 9, 11.) On April 13, 2022, knowing that he had a parole hearing scheduled in October, the plaintiff "decided to come out & face the knives and threats and killers to stop getting write ups[.]" (*Id.* at 11.) However, he was assigned to a cell occupied by a gang member who would not allow him to remain in the cell, and who had treated "the last four cellies before [the plaintiff] the same way." (*Id.* at 11–12.) The plaintiff left the cell and spent the night in the day room, after which Chief Porter returned him to his assigned cell. (*Id.*) He was again threatened by his cellmate, who told him to "get out" and threatened that the plaintiff would "get hurt" if he returned. (*Id.* at 12.) After spending a second night in the day room, the plaintiff was confronted by Chief Porter and commanded to return to the cell. (*Id.*) He objected that his cellmate would hurt him if he returned, and Chief Porter responded by stating that he "would rather be hurt by [the cellmate] than to be hurt by [Porter]," and "'[Y]ou don't want me to hurt you.'" (*Id.*) When the plaintiff still refused to

4

return to his cell, Chief Porter ordered him up against the wall, and though the plaintiff's feet were spread apart, Chief Porter "forcefully swept [his] right leg farther apart," which "pulled something" in the plaintiff's groin and "reinjured" his back at the site of an old disc surgery. (*Id.* at 13.)

On May 4, 2022, the plaintiff and a new cellmate were robbed and assaulted by two gang-member inmates with knives. (*Id.* at 14.) Unit Manager Cockrell responded to this incident and directed that the plaintiff be seen in medical. (*Id.*) When the plaintiff told Cockrell that another gang-affiliated inmate was "trying to make [him] pay shower security," she mentioned moving the plaintiff to a different unit. (*Id.* at 14–15.) But after Cockrell left the plaintiff's cell, no staff members came to take him to medical or to otherwise check on him. (*Id.* at 15.) The plaintiff came out of his cell after two days, to eat, shower, and use the phone. (*Id.*) Two days after that, on May 8, 2022, he was again assaulted by a gang-affiliated inmate. (*Id.*) He alleges that "if Unit Manager Cockrell would have kept her word it would not have happened." (*Id.*)

On the afternoon of May 15, 2022, the plaintiff was waiting to use the phone when a gang-affiliated inmate asked him when he would make his "shower security" payment. (*Id.* at 16.) When the plaintiff replied that he did not have any money, the other inmate attacked him and was soon joined by two other inmates. (*Id.*) As a result of this attack, which the plaintiff "told Unit Manager Cockrell . . . was gonna happen," he was left with an extremely swollen face and pain that was not addressed until the following day, when he was sent to Trousdale County Hospital. (*Id.*) When he returned to TTCC, the plaintiff was placed in protective custody. (*Id.*)

## C. Analysis

Liberally construed, the plaintiff's allegations support a claim that the defendants violated his Eighth Amendment rights by failing to protect him from violence at the hands of inmate gang members. To state a viable failure-to-protect claim, an inmate must allege that officials were

5

Case 3:22-cv-00519   Document 5   Filed 11/30/22   Page 5 of 9 PageID #: 87

deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). To meet this standard, the inmate must show that officials were "subjectively aware of the risk" of harm and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 847). For purposes of preliminary review, both Chief Porter and Unit Manager Cockrell are sufficiently alleged to have been aware of a risk of harm to the plaintiff from, respectively, a combative gang-member cellmate known to threaten new cellmates (and whom Chief Porter had been advised was specifically threatening the plaintiff), and different gang members attempting to enforce their "shower security" extortion scheme (whom the plaintiff reported to Cockrell, prompting her remark about moving him to a different unit). These facts allow the reasonable inference that defendants Porter and Cockrell, in leaving the plaintiff housed with those threatening gang members, were deliberately indifferent to his safety.

Only Cockrell's deliberate indifference is alleged to have resulted in actual harm at the hands of other inmates. However, at this early stage and construing the Complaint in the plaintiff's favor, the court finds that a colorable failure-to-protect claim is stated against Chief Porter as well as Unit Manager Cockrell, given the level of hostility toward him from gang-affiliated inmates and other instances where he was attacked by gang members during the same timeframe as his interaction with Porter. *See Douglas v. Annuci*, No. 14-CV-6018 CJS, 2017 WL 5159194, at *6 (W.D.N.Y. Nov. 7, 2017) (finding that risk of serious harm was not insubstantial simply because plaintiff had not been assaulted in conjunction with the particular risk ignored, where plaintiff alleged active contract on his life by prison gang members and other occasions where he was violently attacked by gang members; declining to dismiss failure-to-protect claim).

Moreover, although Chief Porter's refusal to relieve the plaintiff from his assignment to a cell with a hostile gang member did not result in the plaintiff being attacked by that gang member, it did result in Porter's use of allegedly excessive force against the plaintiff. "An excessive force claim has two components: (1) the objective component, whether the injury was sufficiently serious and (2) the subjective component, whether the prison official applied force 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Young v. Hooks*, No. 17-3389, 2018 WL 4998183, at *1 (6th Cir. Sept. 5, 2018) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). In his Complaint, the plaintiff alleges that Porter threatened to hurt him if he did not comply with the order to go back to his assigned cell, and when the plaintiff refused out of fear of his gang-affiliated cellmate, Porter ordered the plaintiff against the wall and, despite the plaintiff's compliance with this order, "forcefully swept his right leg" which caused him to pull his groin muscle and injure his back. (Doc. No. 1 at 12–13.) Accepting those allegations as true, the plaintiff has provided sufficient facts to show that Porter "injured him and did so for the purpose of causing harm." *Young*, 2018 WL 4998183, at *1 (drawing same conclusion from allegations that defendant "order[ed] Young against the wall [and] violently kicked his ankles, causing him to fall and injuring him"). Accordingly, the Complaint states a colorable excessive-force claim against Chief Porter.

The plaintiff does not allege that the indifference to his safety at TTCC was directly attributable to an official policy of CoreCivic or to a particular action of Warden Frink. Corporate entities performing state functions such as prison operation are properly sued under Section 1983, *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996), but cannot be held vicariously liable for the misdeeds of their employees. *Id.* at 818. Such entities can be held directly liable under Section 1983, but only if a corporate policy or custom "was the moving force behind the

deprivation of the plaintiff's rights." *See Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)). Although the plaintiff states that he has informed multiple non-defendant officials ("AW Norman, IA Hunt, The Chief of Security, TDOC Liaison Brun, Ms. Mathews, [and] Chief Beavers") of his fear of being attacked by gang-affiliated inmates, and that CoreCivic "don't care" (Doc. No. 1 at 8), this lack of concern is not alleged to be manifest in any CoreCivic policy and thus does not establish the corporation's deliberate indifference to inmate safety. *Street*, 102 F.3d at 818. However, at this early stage and liberally construing the Complaint in the plaintiff's favor, his allegations of (1) being placed in protective custody at TTCC on two occasions, after severe beatings in 2018 and May 2022, (2) while such placement was denied at all other times despite his ongoing conflicts with gang members (including an assault in January 2022) and (3) while the institution refused to declare particular inmates "incompatible" with the plaintiff or to address his repeated complaints of threats associated with gang-enforced "shower security," allow the reasonable inference that CoreCivic maintains a custom of declining to intervene in gang-related conflicts unless serious injury results. Accordingly, an Eighth Amendment failure-to-protect claim will also proceed against CoreCivic.

However, with regard to Warden Frink, the Complaint names him as a defendant but does not assert any explicit claim against him. Even if the Complaint is liberally construed to assert a claim of Warden Frink's supervisory liability for the violations alleged to have occurred under his watch, supervisory liability requires some sort of active involvement with—rather than a mere failure of action to prevent—unconstitutional behavior that proximately causes injury to the plaintiff. *Crawford v. Tilley*, 15 F.4th 752, 761–62 (6th Cir. 2021). Because the plaintiff does not allege any "active unconstitutional conduct" by Warden Frink, he fails to state a colorable claim

of supervisory liability for any failure to protect him from harm. *Id.* at 767. Warden Frink will be dismissed from this action.

### III. CONCLUSION

As discussed above, the plaintiff's IFP application (Doc. No. 2) is **GRANTED**.

The court finds that the Complaint states nonfrivolous claims against Defendants CoreCivic, Porter, and Cockrell. Accordingly, the Clerk is **INSTRUCTED** to send the plaintiff service packets (blank summonses and USM 285 forms) for each of these Defendants. The plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **21 DAYS** of the date of this order. Upon return of the completed service packets, **PROCESS SHALL ISSUE**.

Defendant Frink is **DISMISSED** from this action.

The court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude the court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge